RECEIVED BY MAIL
FEB 26 2016
Clerk, U.S. District Court
Duluth, Minnesota

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Eric Sorenson

        Plaintiff(s),

(Enter the full name(s) of ALL plaintiff(s)
and prisoner number(s) in this action)

vs.

Minnesota Department of Human Services, Minnesota Sex Offender Program, Lucinda Jesson, Emily Johnson Piper, Shelby R. Richardson, Nancy Johnston, David Paulson, Kevin Moser, Angela Vatalaro, Nicole Boder, Victoria Paulette Aldridge, 2010 – Present Health Services Department Staff at the Minnesota Sex Offender Program as "Doe No. 1",

        Defendant(s).

(Enter the full name(s) of ALL defendants in this action. Please attach additional sheets if necessary).

Case No.: 16-CV-503 ADM/LIB
(To be assigned by Clerk of District Court)

**COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS UNDER TITLE 42 U.S.C. § 1983**

**DEMAND FOR JURY TRIAL**

YES [ X ]    NO [ ]

## I. PREVIOUS LAWSUITS

A. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment in the last three years:

    Yes [ ]    No [ X ]

B. If your answer to (a) is "yes," describe each lawsuit in the space below.

    1.    Parties to the previous lawsuit:

        Plaintiff(s):

        Defendant(s):

    2.    Court (If federal court, name the district. If state court, name the county):

SCANNED
FEB 29 2016
U.S. DISTRICT COURT DULUTH

3. Case Number:

4. Name of judge assigned to the case:

5. Cause of action (Cite the statue under which you filed and write a brief statement of the case):

6. Disposition or final determination of the case (for example, dismissed or appealed)

7. Approximate date of filing the lawsuit:

8. Approximate date of disposition or final determination of the lawsuit:

***Attach a copy of the disposition or final determination of the lawsuit if it was filed in a court other than the U.S. District Court for the District of Minnesota.***

If there was more than one lawsuit, describe the additional lawsuits on a separate sheet of paper answering the same questions in the same order as above in Question 1 (b). Label this information as Question 1 (b).
Check here if additional sheets of paper are attached. ☐

## II. PLACE OF PRESENT CONFINEMENT

A. Is there a detainee grievance procedure in the institution?

   Yes [ X ]        No [ ]

B. Did you present the facts relating to your complaint in the grievance procedure?

   Yes [ X ]        No [ ]

C. If you answered "yes" to question II.B.:

   *What steps did you take?* I attempted to exhaust the chain of communication. I went through as far as the Nursing Supervisor, which is Defendant Angela Vatalaro.

***What was the result?*** Defendant Angela Vatalaro never responded to my attempts at grieving the issues involved in this Complaint and thus chilled any further attempts at grieving any of the respective issues involved herein. Also, it is further noteworthy, that Plaintiff is not required to exhaust any administrative remedies as he is not a prisoner and thus the PLRA does not apply to Plaintiff.

\*\*\*Attach a copy of the decision or disposition received from the prisoner grievance procedure.\*\*\*\*

D.  If you answered "no" to question II.B., explain why you did not present the facts relating to your complaint in a prisoner grievance procedure.:

## III. PARTIES

List your name, in the first blank, prisoner number, address and telephone number. Do the same for any additional Plaintiffs. Attach an additional sheet of paper, if necessary.

A.  **Name Of Plaintiff:** **Eric Michael Sorenson**
    Prisoner Number: Not Applicable
    Address: 1111 Highway 73, Moose Lake, MN. 55767
    Phone: (218) 351-1900   Ext.        (Voice Mail Only)

    ***Additional Plaintiffs:***
    Name:
    Prisoner Number: Not Applicable
    Address: 1111 Highway 73, Moose Lake, MN. 55767
    Phone: (218) 351-1900   Ext.        (Voice Mail Only)

Provide each defendant's full name official position, and place of employment. Attach additional sheets of paper, if necessary.

B.  **Name Of Defendant:** **Minnesota Department of Human Services ("MDHS")**
    Official Position: This is an entity of the State of Minnesota.
    Employer's Address: 444 Lafayette Road North, St. Paul, Minnesota 55155.

***Additional Defendants:***

| | |
|---|---|
| Name: | **Minnesota Sex Offender Program ("MSOP")** |
| Official Position: | This is an entity of the State of Minnesota. |
| Employer's Address: | 1111 Highway 73, Moose Lake, Minnesota 55767. |
| | |
| Name: | **Lucinda Jesson ("Jesson")** |
| Official Position: | Ex-Commissioner of Minnesota Department of Human Services. |
| Employer's Address: | 444 Lafayette Road North, St. Paul, Minnesota 55155. |
| | |
| Name: | **Emily Johnson Piper ("Piper")** |
| Official Position: | Current Commissioner of Minnesota Department of Human Services. |
| Employer's Address: | 444 Lafayette Road North, St. Paul, Minnesota 55155. |
| | |
| Name: | **Nancy Johnston ("Johnston")** |
| Official Position: | Upon information and belief, the Ex-CEO of the Minnesota Sex Offender Program. |
| Employer's Address: | 444 Lafayette Road North, St. Paul, Minnesota 55155. |
| | |
| Name: | **Shelby R. Richardson ("Richardson")** |
| Official Position: | Interim CEO of the Minnesota Sex Offender Program. |
| Employer's Address: | 444 Lafayette Road North, St. Paul, Minnesota 55155. |
| Name: | **David Paulson ("Paulson")** |
| Official Position: | The Executive Doctor for Minnesota Sex Offender Program and Minnesota Department of Corrections. |
| Employer's Address: | 444 Lafayette Road North, St. Paul, Minnesota 55155. |
| | |
| Name: | **Kevin Moser ("Moser")** |
| Official Position: | Facility Director of the Minnesota Sex Offender Program – Moose Lake. |
| Employer's Address: | 1111 Highway 73, Moose Lake, Minnesota 55767. |
| | |
| Name: | **Angela Vatalaro ("Vatalaro")** |

| | |
|---|---|
| Official Position: | Registered Nurse Supervisor. |
| Employer's Address: | 1111 Highway 73, Moose Lake, Minnesota 55767. |
| **Name:** | **Nicole Boder ("Boder")** |
| Official Position: | Registered Nurse Administrative Supervisor. |
| Employer's Address: | 1111 Highway 73, Moose Lake, Minnesota 55767 |
| **Name:** | **Victoria (aka. "Vicki") Paulette Aldridge** |
| Official Position: | Registered Nurse. |
| Employer's Address: | 1111 Highway 73, Moose Lake, Minnesota 55767 |
| **Name:** | **Doe No. 1** |
| Official Position: | 2010 – Present Health Services Department Staff at the Minnesota Sex Offender Program. |
| Employer's Address: | 1111 Highway 73, Moose Lake, Minnesota 55767. |
| **Name:** | **Doe No. 2** |
| Official Position: | 2015-2016 Minnesota Sex Offender Program Transport Officers and its respective Department. |
| Employer's Address: | 1111 Highway 73, Moose Lake, Minnesota 55767. |
| **Name:** | **Any other Jane/John Does Whose true names are not presently known.** |
| Official Position: | Various. |
| Employer's Address: | Various. |

**NOTE: IF THERE ARE ADDITIONAL PLAINTIFFS OR DEFENDANTS, PLEASE PROVIDE THEIR NAMES AND ADDRESSES ON A SEPARATE SHEET OF PAPER.**

**Check here if additional sheets of paper are attached.** ☐
**Please label the attached sheets of paper as II.A. for Plaintiffs and II.B. for Defendants.**

## IV. STATEMENT OF CLAIM

Describe in the space provided below the basic facts of your claim. Describe how each individual defendant is personally involved, including dates, places and specific wrongful acts or omissions by each defendant. Each factual allegation should be provided in separately lettered

paragraphs, beginning with letter A. Do not make any legal arguments or cite any cases or statutes.

A. *Defendants Minnesota Department of Human Services ("MDHS") and Minnesota Sex Offender Program ("MSOP").*

Defendants MDHS and MSOP have and continue to implement a policy, practice, procedure, etc… that provides tacit authority to lower level Defendants, including, among others, Defendants' Paulson, Vatalaro, Boder, Aldridge, and Doe No. 1 to refuse already ordered surgery to Plaintiff and other clients within MSOP. Specifically, Plaintiff had been previously seen by an Ear, Nose and Throat specialist at the Essentia Health Clinic/Hospital and ordered to have surgery on his sinuses. However, Defendants MDHS and MSOP have a policy, practice, procedure that states that Plaintiff cannot be have his sinus surgery done without insurance. Thus, Plaintiff is currently being stopped from his sinus surgery for lack of insurance.

B. *Defendants Lucinda Jesson, Emily Johnson Piper, Nancy Johnston, Shelby R. Richardson, and Kevin Moser.*

Defendants Jesson, Piper, Johnston, Richardson, and Moser all had intimate knowledge of the policy, practice, procedure, etc… of not allowing a person to go and get ordered surgery without insurance. Specifically, in this situation, Defendants Jesson, Piper, Johnston, Richardson, and Moser all knew that Plaintiff was being estopped from gaining access to his surgery that was ordered by the ENT at Essentia Health Clinic\Hospital. However, even though Defendants Jesson, Piper, Johnston, Richardson, and Moser had the authority to effect change in the policy, practice, procedure, etc… they deliberately chose not to effect the change, thus showing tacit authority, as will be shown by the discovery in this matter.

C. *Defendants David Paulson, Angela Vatalaro, Nicole Boder, Victoria Paulette Aldridge, Doe Nos. 1 and 2.*

Shortly after Plaintiff's inception into the MSOP facility in Moose Lake, Minnesota ("MSOP-ML") in 2010, Plaintiff informed Defendants Paulson, Angela (and her Predecessors in office), Boder (and her Predecessors in office), Aldridge, and Doe No. 1 that he was having troubles with his sinuses. Plaintiff informed Defendants Paulson, Angela (and her Predecessors in office), Boder (and her Predecessors in office), Aldridge, and Doe No. 1 that he was diagnosed by his family doctor (Dr. Lempki) that Plaintiff had Chronic Sinusitis. Defendants Paulson, Angela (and

her Predecessors in office), Boder (and her Predecessors in office), Aldridge, and Doe No. 1, collectively, where seen many times by Plaintiff in regards to his sinuses and informed each time that it is in regards to his Chronic Sinusitis. Each time Plaintiff seen Defendants Paulson, Angela (and her Predecessors in office), Boder (and her Predecessors in office), Aldridge, and Doe No. 1 Plaintiff was told that he would not be sent out for sinus surgery because the condition was not warranting such options. Plaintiff appealed and grieved the decisions of Defendants Paulson, Angela (and her Predecessors in office), Boder (and her Predecessors in office), Aldridge, and Doe No. 1 and stated that his condition was getting worse, including bloody flecks, increased pain – i.e., many times reaching a 10 on the pain scale, open soars developing in my sinus cavity, and causing migraines –, the feeling of suffocation, etc.… However, finally, at the end of 2015, five (5) years later, Defendant Doe No. 1 and Plaintiff met in an appointment in the Health Services Department at the MSOP-ML facility and discussed Plaintiff's sinus surgery. At that point Plaintiff was again told that they could not see anything wrong with Plaintiff's sinuses and that he would be referred to Defendant Aldridge to see what she wanted to do. When Plaintiff met with Aldridge he explained again that the sinus surgery would be the only way to cure Plaintiff's Chronic Sinusitis according to his family doctor. Defendant Aldridge then stated that she would refer me to Defendant Paulson for the issue of the recommendation of sending Plaintiff out to a specialist or not. However, Defendants Paulson, Angela (and her Predecessors in office), Boder (and her Predecessors in office), Aldridge, and Doe No. 1 then delayed over a month before having Defendant Paulson see Plaintiff. While Plaintiff was waiting for Defendant Paulson, Plaintiff wrote several client medical requests stating that his Chronic Sinusitis was getting worse – i.e., at least over 6 requests. However, each time, in response, Defendants Angela (and her Predecessors in office), Boder (and her Predecessors in office), Aldridge, and Doe No. 1 would state that Plaintiff was scheduled to see Defendant Paulson so Plaintiff could bring it up to Defendant Paulson when he came. When Plaintiff directly asked Defendants Paulson, Angela (and her Predecessors in office), Boder (and her Predecessors in office), Aldridge, and Doe No. 1 to see Plaintiff sooner, Plaintiff was denied by Paulson, Angela (and her Predecessors in office), Boder (and her Predecessors in office), Aldridge, and Doe No. 1 each and every time. Finally, a month later, Defendant Paulson met with Plaintiff and checked his Chronic Sinusitis where Plaintiff brought up the fact that his Chronic Sinusitis had been getting worse and determined that Plaintiff needed to be seen by a specialist, which required Plaintiff be transported to the

Essential Health Clinic/Hospital in Duluth, Minnesota, while ignoring the Plaintiff's comments about his Chronic Sinusitis getting worse during his wait to see the specialist and Defendant Paulson. Shortly after Plaintiff seen Defendant Paulson, Plaintiff was asked to meet with Defendant McCullah to fill out a form to get health insurance through Sherburne County Health And Human Services ("HAHS"). Shortly after filing out the forms for the insurance, Defendant McCullah took the forms with her. Approximately a month later, Plaintiff was taken to the Essentia Health Clinic/Hospital by the MSOP-ML Transport Officers, being Defendants Doe No. 2. However, prior to being transported, Defendants Doe No. 2 brought Plaintiff back into a long corridor and asked Plaintiff to enter into a holding cell. When Plaintiff was placed into the holding cell, Plaintiff was told that he needed to comply with a strip search in order to be brought out of the MSOP on a medical writ. However at no time before Plaintiff was placed into the medical cell was he informed that he was a flight risk, risk to the public, and/or any other reasons for wanting to strip search Plaintiff; nor upon information and belief, does Plaintiff's facility chart, which all Defendants have access to, even remotely allege such. Plaintiff was forced to comply to strip off his clothing in the holding cell in front of Defendants Doe No. 2 or face the catch-22 consequences of not being allowed to take care of his long-standing and worsening, painful, diagnosed and chronic medical issues. That said, Plaintiff was made to strip down to his bare body and show his bare behind to Defendants Doe No. 2. After Defendants Doe No. 2 finished strip searching Plaintiff they allowed Plaintiff to get dressed and then ordered that Plaintiff put on handcuffs with a black box and leg chains/irons. Again, Plaintiff was never deemed flight risk, risk to the public, and/or any other reasons for wanting to handcuff Plaintiff with or without a black box or leg chains/irons; nor upon information and belief, does Plaintiff's facility chart, which all Defendants have access to, even remotely allege such. After handcuffing Plaintiff with the black box, Defendants Doe No. 2 then had placed Plaintiff into the back of a transfer van, presumably owned by MSOP, that contained a cage inside the van with no tinted windows allowing other vehicles in passing by vans to believe that Plaintiff was incarcerated when he was not. When Plaintiff arrived at Essentia Health Clinic/Hospital, Defendants Doe No. 2 did not removed the handcuffs, black box, nor the leg chains/irons. Defendants Doe No. 2 then placed Plaintiff in a wheelchair that looked rusted out and of poor shape. When Plaintiff sat down in the wheelchair it felt as if it were going to give out/fall apart. Defendants then placed a small folded blanket on my lap, which did not hide the handcuffs, much less the leg chains/irons

thus again making people believe that Plaintiff was a prisoner. When Plaintiff was wheeled into the hospital he was placed into an elevator with other patrons of the hospital with the leg chains/irons showing as well as the handcuffs and black box, again making it appears, although falsely, that Plaintiff was a prisoner. The other patrons in the elevator then clearly shied away from Plaintiff based upon seeing of the restraints Plaintiff was wearing. Once the elevator reached the floor that Plaintiff needed, as he was there to see an ENT Specialist, Defendants Doe No. 2 then wheeled Plaintiff off of the elevator and checked Plaintiff in with the front desk – i.e., Receptionist. After checking in Defendants Doe No. 2 brought Plaintiff through to a waiting room in the back of the office. A person, whom was presumed to be a nurse for the Hospital, entered into the waiting room and asked Defendant Doe No. 2 to follow her with Plaintiff. The nurse led the Plaintiff and Defendant Doe No. 2 into a small exam room and took Plaintiff's vitals – e.g., blood pressure, temperature, etc.…. The nurse then left the room, asked Plaintiff and Defendants Doe No. 2 stay in the room, and was told that the ENT Specialist would be in to meet with Plaintiff and Defendants Doe No. 2 in a moment. Shortly after that, the ENT Specialist came in and met with Plaintiff. The ENT Specialist did a check-up on Plaintiff's sinuses and concluded that Plaintiff needed sinus surgery. Subsequently, the ENT Specialist asked Plaintiff if he would agree to undergo the surgery and Plaintiff stated that he would agree to the surgery. The ENT Specialist then stated to Plaintiff and Defendants Doe No. 2 that he would set up the surgery and coordinate it with Defendants Doe No. 1. The ENT Specialist then concluded the exam and left the room without further incident. Plaintiff and Defendants Doe No. 2 then left the exam room and started back towards the receptionist area still with Plaintiff's restraints showing and making no attempt to cover them up or remove them. Defendants Doe No. 2 and the Plaintiff started to exit the Hospital and was stopped by the receptionist to be provided with Christmas candy. Defendants Doe No. 2 and the Plaintiff then entered onto the elevator and went down towards the main lobby. Defendants Doe No. 2 then wheeled Plaintiff out to the van, which was waiting for Plaintiff and Defendants Doe No. 2, as Defendants Doe No. 2 split up and one went to get the van and one wheeled Plaintiff through the lobby. After placing Plaintiff into the transport van, Defendants Doe No. 2 transported Plaintiff back to the MSOP-ML facility. Once at the MSOP-ML facility, Defendant Doe No. 2 then asked Plaintiff to enter into the holding cell (the same one in which he was made to strip the first time), and took the restraints off of Plaintiff. While in the holding cell, immediately after being restrained fully, Defendants Doe No.

2 again ask Plaintiff to perform a strip search or receive a Behavioral Expectations Report. It should be noted that if a client, such as the Plaintiff does not comply with a strip search they are confined to punitive segregation, also called the High Security Area ("HSA"). Plaintiff, under coercion was forced to comply with the strip search. Again, Defendants Doe No. 2 striped Plaintiff to bare naked and made Plaintiff show them his rear end. Only after Plaintiff complied did Defendants Doe No. 2 allow Plaintiff to get his clothes back and to be able to put them on. After Plaintiff got dressed Plaintiff then left the holding cell and went back to his living unit. About 30 days later, Defendants Aldridge, to prepare for the ENT Specialist ordered sinus surgery, provided Plaintiff with a pre-op (which presumably stands for "pre-operation") checkup. Defendant Aldridge then told Plaintiff that Defendants Paulson, Angela (and her Predecessors in office), Boder (and her Predecessors in office), Aldridge, and Doe No. 1 may have to cancel Plaintiff's sinus surgery that was ordered by the ENT Specialist because Plaintiff did not allegedly have health insurance. Plaintiff finished with the pre-op checkup and went back to his unit. A few days later Plaintiff wrote a request to Defendant Aldridge to speak with her. When Defendant Aldridge finally met with Plaintiff, Defendant Aldridge then stated she had to cancel Plaintiff's sinus surgery that was ordered by the ENT Specialist previously because Plaintiff did not have any health insurance. Plaintiff then reminded Defendant Aldridge that he was award of the State of Minnesota, and much like being confined Defendants must pay for the surgery, especially after it was pre-ordered by an ENT Specialist. Defendant Aldridge stated "well, I can't do anything to help you", and "you should have had insurance" and then abruptly left the exam room. A few days later Plaintiff submitted a client medical request to see Defendant Valantaro, Defendant Aldridge's supervisor, and was informed by her that Defendant Paulson makes the final decisions and that it was up to him to send Plaintiff for sinus surgery without insurance and she could not override him. Plaintiff then again repeated that he was civilly committed and again much the same as a prisoner, has the right to have Defendants pay for the medical care and worry about repayment back at a later point after the surgery. However, even over Plaintiff's objections, Defendant Valantaro still stated that she could not help Plaintiff and then stated in a rude and abrupt tone "well you should have kept your insurance current". Further during the meeting with Defendant Valantaro, she admitted to Plaintiff that MSOP has been cracking down on people having insurance prior to allowing them to get surgery of any kind.

**Attach additional sheets of paper as necessary.**
**Check here if additional sheets of paper are attached.** ☐
**Please label the attached sheets of paper to as Additional Facts and continue to letter the paragraphs consecutively.**

## V. REQUEST FOR RELIEF

State briefly exactly what you want the Court to do for you. Do not make any legal arguments or cite any cases or statutes.

- Issue proper declaratory judgment against Defendants;
- Order that I forthwith be provided my sinus surgery as I was previously ordered by the ENT at Essentia Hospital;
- Issue nominal, compensatory, special, statutory and punitive damages against Defendants either jointly or severally;
- Issue any other relief as the Court deems just and necessary.

I (We), Eric Michael Sorenson, hereby certify under penalty of perjury that the above complaint is true to the best of my (our) information, knowledge, and belief.

Signed this __22__ day of __Feb. 2016__.

Signature(s) of Plaintiff(s) _[signature]_

**Subscribed and Sworn to before me this __22__ day of January, 2016**

CHRISTINE CAROL JOHNSON
COMM. #31022610
Notary Public
State of Minnesota
My Commission Expires 1/31/2017

By: _Christine Carol Johnson_

Note: All plaintiffs named in the caption of the complaint must date and sign the complaint and provide his/her mailing address and telephone number. Attach additional sheets of paper as necessary.

Page 11 of 11